(No. 15302.—Judgment affirmed.)

THE NOKOMIS COAL COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.—(LOUIS JAROS, Defendant in Error.)

*Opinion filed June 20, 1923.*

WORKMEN'S COMPENSATION—*when award for permanent partial loss of use of leg will not be disturbed.* An award for permanent loss of forty per cent of the use of a leg because of an injury for which it is admitted compensation is due, will not be set aside where the employee testifies, two years after the injury, that although he has been earning as much, or more, than before he was injured, he cannot do as much hard work or do things requiring the use of his leg as well as he did before his injury and where no other evidence is offered as to the extent of the injury at the time of the hearing.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

HILL & BULLINGTON, (ROBERT H. DAVIS, of counsel,) for plaintiff in error.

SAM GILBERT, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Louis Jaros, defendant in error, applied to the Industrial Commission for adjustment of his claim for compensation on account of an accidental injury to his back and right leg suffered on May 23, 1919, in the course of and arising out of his employment as a track-layer and timberman in the mine of the Nokomis Coal Company, plaintiff in error. There was a hearing before an arbitrator, at which it was stipulated that Jaros was in the employ of the coal company and on May 23, 1919, received an injury arising out of and in the course of his employment; that the coal company had notice of the accident within thirty days;

308—39

that medical services had been rendered by the coal company and $72 paid and there was no further claim on that account; that Jaros was married but had no children; that he returned to work on August 6, 1919, and that the question in controversy was the extent of the injury, and what, if any, compensation he was entitled to receive.

Jaros testified that in drilling a hole he made a scaffold by putting boards on a powder keg; that the keg fell over and he fell on his back, striking a piece of sulphur bar; that his back got weaker and pained him and pains shot down into his right leg; that the leg was weak and numb and he had lost forty per cent of the use of the leg. The ultimate fact to be determined by the arbitrator was what per cent, if any, of loss of the use of the leg had been caused by the injury. That was to be determined by the arbitrator as a conclusion from the evidence tending to show the condition of Jaros and his ability to make use of the injured member as compared with such ability before the injury. The coal company objected to the testimony of Jaros concerning the ultimate fact by which he substituted himself for the arbitrator, and the objection was overruled. There was testimony of two doctors and evidence tending to prove the effects of the injury, but the arbitrator appeared to have accepted the conclusion of Jaros, and made an award of $12 per week for nine weeks and four days for temporary total incapacity and $12 per week for seventy weeks upon a finding that the injury caused permanent partial loss of forty per cent of the use of the right leg. On a review by the Industrial Commission the objection to the testimony which Jaros had given as to the percentage of loss was insisted upon, and there was some further evidence as to his condition. The Industrial Commission affirmed the award of the arbitrator, and on a writ of *certiorari* from the circuit court of Montgomery county the court on January 10, 1921, set aside the award as having been based on the testimony of Jaros as to the percentage of loss of the use of

his right leg and referred the claim back to the Industrial Commission for the purpose of hearing further testimony by which to fix a proper basis for the determination of the amount of allowance to be made. There was another hearing before the Industrial Commission, when the award of the arbitrator was again affirmed, and a writ of *certiorari* having been again issued out of the circuit court, the writ was quashed and the decision of the Industrial Commission affirmed. A writ of error was allowed by this court and the entire record is before us.

No question of law is involved but only whether the injury is permanent and the extent of it. The plaintiff in error contends that the judgment of the circuit court still rests upon the testimony of Jaros that he had lost forty per cent of the use of his leg; that there was no other evidence upon which the award could have been based, and that the evidence not only does not show that he sustained forty per cent permanent loss of the use of his leg but does not show that he sustained any permanent loss. When Jaros suffered his injury he was first treated by Dr. C. W. Vaughn, who did work for the company, and on May 24, 1919, he found a bruise and sprain of the small of the back and hips. He treated Jaros for about two weeks and testified that he was getting better, and Jaros was then referred by the company to Dr. J. J. Pleak, an osteopath. The osteopath testified that he first treated Jaros on June 30, 1919, and found an anterior rotation of the right innominate bone, which osteopaths term a partial dislocation; that the innominate bone joins the sacrum, and a dislocation of it might have an effect on the sciatic nerve down the leg and weaken it and prolong pain; that the dislocation would alter the relation between the innominate bone and the sacrum; that he reduced the dislocation on the second treatment; that in this character of cases, if the patient will help, the osteopath can get a complete recovery; that Jaros returned to work but the doctor told him

not to return; that Jaros went to work too soon, and the doctor believed that another week's treatment would have cured him.

Jaros returned to work August 6, 1919, and worked steadily thereafter in his former employment as track-layer and timber-man. The last hearing was on February 25, 1921, and Jaros had worked regularly up to that time and received as much, or more, wages than before the injury. There had been a raise in wages, and he had earned $7.25 a day and worked more hours than the mine was in operation. He was paid at the rate of 62½ cents an hour for eight hours, and worked every day the mine worked and a considerable amount of extra time. He had his brother as a helper, and they handled heavy timbers, props and bars, and Jaros used a four-pound sledge in spiking rails. He testified that he could not stand hard work as he could before his injury, such as pushing or standing on the leg; that it got weak and trembled if he did work standing on it; that he sat down mostly when he spiked rails; that before he was hurt he could walk eight, ten or twelve miles without tiring; that he went out hunting recently and walked five miles and his leg got numb and he had to sit down; that he was a ball-player before the injury and could not get around now as he used to; that there had been no change in the condition of his leg since the injury, and that when he took light work and spiked rails he got along pretty well. The only time that he had lost from his work was the day when he went hunting.

Weight is to be given to the testimony of Dr. Vaughn and Dr. Pleak as to the condition of the back and leg when Jaros was treated in 1919, but there has been no medical examination or treatment since that time. There was no examination by any doctor to ascertain the condition of the leg and the extent of the disability, which might have demonstrated a condition different from the testimony of Jaros, but the question was submitted upon his testimony and evi-

dence of what he had been doing and what he had earned. While he had been earning as much, or more, than before the injury, that fact is not conclusive that the injury had not resulted in permanent loss of some use of his leg. There cannot be much doubt that the Industrial Commission was authorized to find the admitted injury to be permanent, and although there may be some reason to doubt whether the injury was as great in extent as the finding, we would not be authorized, in the present state of the record, to set aside the award.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*