(No. 3992— ▮▮▮▮▮▮▮▮▮▮)

JOHN O'DORNAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.
*Opinion filed May 13, 1947.*

HARRY A. SEWELL, EUGENE LIEBERMAN, Attorneys for claimant.

GEORGE F. BARRETT, Attorney General, WM. L. MORGAN, Assistant Attorney General, for respondent.

DAMRON, J.

This complaint was filed October 8, 1946 seeking an award under the Workmen's Compensation Act for disability and reimbursement for medical expense by reason of injuries alleged to have been sustained in an accident on March 21, 1945.

It was stipulated, upon the hearing, that the injury arose out of and in the course of claimant's employment. All jurisdictional questions are resolved by the stipulation and the evidence.

The transcript of evidence was filed on February 28, 1947.

The claimant, John O'Dornan, is 55 years of age and has been employed continuously since 1931 by the Department of Public Welfare as a maintenance man in the Engineering Department at the Chicago State Hospital. During the year immediately preceding the acci-

dent his rate of pay was $1.75 per hour and his gross annual earnings were $3,449.25.

On March 21, 1945 in the course of his duties he lifted steel beams and ovens in the bakery shop at the hospital which was then being remodeled. Prior to this date, claimant experienced no physical difficulty although his work necessitated lifting and moving heavy objects. On this date, he complained to the master mechanic that he was injured and could not work any more. He was directed to the employee's hospital where he was told he probably had caught "cold in his back" from a draft and was instructed to take heat treatments. That was the only treatment he received from respondent. Ten days later Dr. Benjamin Cohen of the hospital staff visited and examined him at his home but did not prescribe treatment.

The day following the accident claimant consulted his own doctor. In July 1946 he was reimbursed by respondent in the sum of $142.50 for his medical expense. Since then he has continued medical treatment and has expended $177.75 additional for physicians, x-rays and medicine for which he has not been reimbursed.

Claimant returned to work on May 9, 1945 and was fully compensated by respondent for this period of temporary total disability.

Since resuming employment claimant has worked steadily. There is no evidence to show that he has earned less than he did prior to March 21, 1945. On the contrary he testified that he is now receiving more money than he did prior to the injury. He is doing his regular work with the exception of lifting heavy objects but experiences almost constant pain at the base of his spine while moving around and is no longer able to lift heavy objects or carry heavy burdens.

Dr. Benjamin Cohen called by respondent testified

he examined claimant in the latter part of March 1945; he took no x-rays and diagnosed claimant's condition as lumbar myositis which is an inflammation of the muscles in the lumbar region caused by lifting, straining and similar activities. Dr. Cohen's diagnosis was "merely a clinical impression." An x-ray taken when claimant returned to work disclosed osteoarthritis involving the articular facets.

Dr. L. Willard Shabat testified on behalf of claimant. Respondent conceded Dr. Shabat's qualification. He examined claimant on September 17 and October 5, 1946 and again on February 1, 1947. His objective findings in relation to the complaint in question disclosed marked restriction of forward, lateral, and backward motion of the spine; restriction of straight leg raising on either side but especially the left leg as shown by the Guenslen and Laguere tests indicative of lumbo-sacral and sacroiliac involvement and marked spasm of both erector spinal groups of muscles. X-ray films of claimant's back were interpreted as showing evidence of arthritic changes of lipping along the lateral aspect of the bodies of the vertebrae and in the lumbo-sacral joint. These lippings evidencing outgrowth of bone presented a severe type of osteoarthritis. Claimant's forward motion of the spine is 35 degrees or 60% les than the 90 to 100 degree normal faculty. The lateral sway of the spine is only 20 degrees to either side as contrasted with a normal range of 45 degrees. He has pain in arching his back and has what is called a stiff or "poker" back. On the basis of these findings claimant in the opinion of Dr. Shabat had a 35% disability of his back. The condition in his judgment is permanent and progressive. It invariably involves locomotion and causes disability of the lower extremities. As the condition progresses and the overgrowth of bone is

laid down in the course of nature's compensatory healing the tendency is to "freeze" the joint even more, the person cannot bend and his lower extremities become rigid. The limited movements and restricted locomotion of his lower extremities are definitely related to the degree of motion he can obtain from his back and hence it is definitely impaired.

He further testified to a direct causal relationship between the lifting of the heavy objects on March 21st and the condition as above described and that the pre-existing arthritic condition was aggravated by the injury.

On cross-examination, Dr. Shabat stated injury will not accelerate arthritis; it will merely elicit symptoms in a silent type of arthritis and that had claimant sustained no accident, he would still have an arthritic condition which would develop progressively. On redirect examination, he stated these arthritic conditions could exist for years without symptoms evidenced to the patient until an excessive lift or pull or other exciting factor would provoke or start off the vicious cycle.

This evidence will not warrant an award for either temporary total incapacity under Sec. 8(b) of the Workmen's Compensation Act or for partial incapacity under the provisions of paragraph (d) of that section.

Paragraph (d) in substance provides that where, after and as a result of injury, the employee becomes partially incapacitated from pursuing his usual and customary line of employment he shall, except in the cases covered by the specific schedule of Section 8, paragraph (e), receive compensation equal to 50% of the difference between the average amount earned before the accident and the average amount which he is earning or able to earn after the accident. The claimant is not shown to have incurred any diminution of earnings.

The case of *William Co.* vs. *Palush,* 303 Ill. 352 cited by claimant and the quotation therefrom to the effect that it does not follow as a proposition of law that compensation can be denied merely because the employee earned more subsequent to the injury than he did before, involved an award under paragraph (c) of Section 8 for permanent and serious disfigurement of the hand. This case has no application to Section 8 (d). It is only for disfigurement under paragraph (c) or for the specific loss of members covered by the schedules of paragraph (e) that no showing of reduced earnings is required as a basis for recovery. *Nokomis* vs. *Industrial Commission* 308 Ill. 609.

The decisions of the Supreme Court as well as the decisions of this court have uniformly held that before an award for partial incapacity under paragraph (d) is justified, the claimant must show that he is not earning, or is not able to earn as much as he earned before he was injured. The amount the injured employee is able to earn, will never be less than he actually earns and if the injury does not reduce his earning capacity he is not entitled to compensation for partial disability under paragraph (d). Compensation in such instances is based only on reduced earning capacity and is measured by such loss. *Groveland Coal Co.* vs. *Industrial Commission,* 309 Ill. 73 at 74; *Consolidated Coal Co.* vs. *Industrial Commission,* 314 Ill. 526 at 528; *Dial* vs. *State,* 15 C.C.R. 53.

It is manifest that no award for partial incapacity under paragraph (d) can be made to claimant inasmuch as he has shown no loss of earning capacity as required by the statute.

On the other hand, the evidence of the claimant, supported by Dr. Shabat and to some extent by Dr. Cohen for the respondent, clearly indicates that claimant as a result of the accident, sustained an injury which aggra-

vated a pre-existing arthritic condition and that a disability ensued from such aggravation. Where pre-existing conditions of disease are aggravated by an accidental injury, the disability resulting from such aggravation is compensable. *Chicago Park District* vs. *Industrial Commission,* 372 Ill. 358; *Bartholomew* vs. *State,* 15 C.C.R. 117. This doctrine as it relates to a claimed partial incapacity under paragraph (d) is necessarily qualified by the express provision of that paragraph which requires proof of loss of earning capacity before an award could be made thereunder. However, as we have pointed out no such qualification exists in cases of losses covered by the specific schedule of paragraph (e). Loss of earning capacity is not a condition to recovery for specific losses under the last mentioned paragraph. *Nokomis* vs. *Industrial Commission* supra.

From a careful consideration of the record, we find from a preponderance of the evidence that claimant has sustained a permanent and partial loss of use of both his legs to the extent of 15% which disability can be attributed to the aggravation of his pre-existing arthritic condition. For this permanent and partial loss, claimant is entitled to an award. His compensation rate is $17.63 as provided by the Act. For the permanent and complete loss of a leg claimant would be entitled to his weekly rate for 190 weeks or $3,349.70. A 15% loss would entitle claimant to $502.45 for each leg or $1,004.90 for both members computed at the rate of $17.63 per week for 57 weeks.

Claimant has expended $177.75 for medical services, x-rays, and medicine rendered on account of his injuries for which he is entitled to reimbursement as follows: Dr. L. Willard Shabat, $140.00; X-rays, $15.00; Medicines, $22.75.

A. M. Rothbart, Court Reporting Service, has filed a bill in the sum of $43.75 for taking and transcribing the evidence. The charge is fair, reasonable and customary and is allowed.

An award is entered in favor of claimant John O'Dornan for One Thousand Two Hundred Twenty-Six Dollars Forty Cents ($1,226.40) all of which has accrued and is payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."